UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 05-CV-102-HRW

FRANCISCO AVILLA                                                              PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA, ET AL.                                   DEFENDANTS

Plaintiff, Francisco Avilla, an individual who is currently confined at the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), has filed a complaint which he states falls under 42 U.S.C. §1983. Upon review of the plaintiff's submission, the Court concludes that the complaint actually falls under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[1] The plaintiff has paid the requisite filing fee.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

This is a *pro se* proceeding and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i)

---

[1] The plaintiff mistakenly states that his claims fall under 42 U.S.C. §1983, which applies to persons who act under color of state, not federal, law. The plaintiff names defendants who are either federal actors or federal entities. To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397. Thus, the plaintiff's constitutional claims would fall under *Bivens*.

frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff states that he is a Mexican and can speak no English. He states that on September 3, 2004, he was incarcerated at FCI-Safford, Arizona, serving the last four years of a twenty-one-year drug conspiracy sentence. He states that on that date, a fight ensued between a Mexican inmate and a Hawaiian inmate. He alleges that as a result, the Bureau of Prisons ("BOP") transferred 200 Mexicans out of that facility. The plaintiff alleges that although he neither made any threats nor participated in the skirmish, he was transferred out of FCI-Safford without benefit of any investigation or questioning.

He states that thereafter, he was confined in the Safford County Jail for three months. The complaint is unclear, but it appears that the plaintiff alleges that he was placed either in segregated confinement or isolated confinement while confined in the Safford County Jail.[2] He alleges that during this time, he was deprived of all of his rights as a prisoner. The plaintiff states that although he was classified as a low-security inmate, he was then transported to the following federal facilities: (1) "F.C.I. in Phoenix, Arizona," a medium- security facility;[3] (2) the "Federal Detention Center in Oklahoma"; (3) the "Federal Detention Center in Atalanta"; and, finally, (4) FCI-Ashland.

The plaintiff asserts three claims. First, he alleges that his numerous transfers to other BOP facilities, after September 3, 2004, violated his due process rights, particularly in light of the fact that

---

[2] In a separately filed pleading, the plaintiff alleged that when he was removed from FCI-Safford, he was "subjected to an excess of 120 days in segregation *during transit to FCI-Ashland.*" [*See* Record No. 3, Attachment: "Memorandum Demonstrating Plaintiff's Exhaustion of Administrative Remedies"] (Emphasis Added). He alleges that during this time, he made repeated requests for a Spanish-speaking interpreter, for legal materials, and for access to administrative remedies [*Id.*].

[3] Plaintiff states that he was placed in segregation for thirty days while confined at FCI-Phoenix.

2

several of the prisons to which he was transferred were higher security level facilities. He also complains that the BOP added two points to his security classification, which action he contends cost him his eligibility for placement in a prison camp.[4] Plaintiff seeks a transfer closer to his home region (ostensibly, Arizona) because he is reaching the end of his sentence, and because it would enable him to be closer to his family.

Second, he complains that while he was restricted to either segregation and/or solitary confinement, he was deprived of basic human rights in violation of the Eighth Amendment. The plaintiff did not specify what basic human rights he was denied, other than to state that because he was not given a Spanish-speaking interpreter, he was denied access to the courts in violation of the First Amendment.

Third, the plaintiff alleges that the BOP discriminated against all Mexicans, and against him personally because he is Mexican.

## RELIEF

The plaintiff seeks injunctive relief in the form of an order requiring the BOP to transfer him to a low security level prison "within his region" [Record No. 1, Complaint, p. 23]. He also seeks damages in the amount of $50,000.00.

## DEFENDANTS

The named defendants in this action are: (1) The United States of America; (2) the BOP; and (3) Terry O'Brien, warden of FPC-Ashland.

## DISCUSSION

---

[4]
The plaintiff complains that he has served 15 years in prison, without a single write-up, and that he worked very hard to achieve his status as a low-security prisoner and to be able to remain in his region. He claims that "without warning or notice, they [the BOP] took that from him." [Complaint, p. 23]

3

1. Exhaustion Requirement

The Court notes that the plaintiff has filed a twenty-three-page complaint, which consists in large part of statements of constitutional principles and the recitation of various federal regulations affecting the BOP. Very little of the submission actually concerns the plaintiff's claims. The Court will first address whether the plaintiff has exhausted the applicable BOP administrative remedies.

The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F. R. §542.10-.19 (1998).[5] The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison life such as excessive force, to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement).

Since April 26, 1996, the PLRA, 42 U.S.C. §1997e(a), has read as follows:

No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

---

[5] Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

4

correctional facility until such administrative remedies as are available are exhausted.

The instant plaintiff alleges in two different typewritten submissions, filed as part of Record No. 3, that he made several efforts to exhaust his claims at FCI-Ashland, but that he was unsuccessful in all attempts. He states that he asked his counselor, Mr. Cornwall, to provide him with an administrative remedy form, but that Cornwall denied his request. He next states that he submitted, in writing, an "Inmate Request to Staff" (BP-8) to his unit manager, Mr. Wallace. Plaintiff alleges that Wallace not only denied his request verbally but that he also failed or refused to answer the plaintiff's BP-8 "Inmate Request to Staff." Plaintiff alleges that the BP-8 "Inmate Request to Staff" form is the only administrative remedy form available to federal prisoners.

In twenty-five years of handling prisoner complaints from inmates confined at FCI-Ashland, the undersigned has rarely encountered claims that staff at that facility has overtly ignored or denied prisoners the opportunity to submit administrative grievances. While the Court is unable to state that such a claim has *never* been made by an FCI-Ashland inmate, the Court notes that over the years, the prisoner cases filed in the Ashland docket reflect a strong record that FCI-Ashland staff have consistently attempted not only to respond to written grievances at the institutional level, but also to make available to its inmates *all* of the necessary administrative remedy forms, at all levels.

In sum, the Court finds the plaintiff's allegations--that FCI-Ashland staff have thwarted his attempts to administratively exhaust his claims--to be somewhat specious. Since the allegations in a *pro se* complaint must, however, be taken as true and construed in favor of the plaintiff, the Court will proceed to address the merits of the complaint.

### 2. BOP Classification and Transfer Claims

The plaintiff alleges that because he was transferred without a hearing to several different

5

correctional facilities (some of which were higher security levels than that to which he was originally approved), and because he is now confined in a BOP facility far away from his region, the BOP has violated his right to due process to law. He seeks transfer to a correctional facility in his region which has a lower security level. Since the plaintiff is a federal prisoner and defendant BOP is a federal agency, the claim would fall under the due process prong of the Fifth Amendment.

To the extent that the plaintiff either complains about: (1) having been transferred to a facility not of his liking, (2) being denied a transfer to a lower security level prison closer to his home, or (3) the fact that the BOP increased his security level and thus precluded his eligibility for placement in a prison camp, the plaintiff does not have a valid due process claim under the Fifth Amendment. Well settled law establishes that with regard to prison transfers and classification status, prisoners have no constitutional entitlement to invoke due process claims. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976) (inmates have neither protected liberty interests nor property interests in custodial classification). Rather, the Attorney General of the United States has delegated those discretionary decisions to the Director of the BOP, which has a classification procedure. 18 U.S.C. §4081; 28 C.F.R. §0.96. *See e.g., Peck v. Hoff*, 660 F.2d 371 (8th Cir. 1981). Congress has given federal prison officials full discretion to control the conditions of confinement.

Transfers and prison assignments are functions wholly within the discretion of the Bureau of Prisons. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 *reh'g denied*, 429 U.S. 873 (1976) (holding that "[n]either, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system," and noting that the fact "[t]hat life in one prison is much more

6

disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules").

In sum, this plaintiff does not have a liberty interest in obtaining a lower, or more favorable, security classification, or in obtaining a transfer to a facility more desirable to them, such as a prison camp.[6] *Meachum*, 427 U.S. 215. *See also Montanye v. Haymes*, 427 U.S. 236 (1976); *Grayson v. Rison*, 945 F.2d 1064 (9th Cir. 1991); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986); *Leibowitz v. United States*, 729 F.Supp. 556 (E.D. MI 1989), *aff'd without opinion*, 914 F.2d 256 (6th Cir. 1990), *cert. denied*, 499 U.S. 963 (1991); *Olim v. Wakinekona, supra*.

The Court dismisses these claims as frivolous. 28 U.S.C. §1915 under (e)(2)(i).

### 2. Claims Against Terry O'Brien

To the extent that the plaintiff has named Terry O'Brien, the Warden of FCI-Ashland, as a defendant, the plaintiff has alleged no personal involvement in any unconstitutional activity. A claim under *Bivens* requires a showing that the named defendant performed the acts that resulted in a deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S.Ct. 598, (1976); *Bivens*, 403 U.S. at 390 n.2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998).

The plaintiff has not alleged that O'Brien violated any of the plaintiff's constitutional rights, or was personally responsible for, or knowingly acquiesced in, any unconstitutional conduct. *See Rizzo v. Goode*, 423 U.S. at 373-77; *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983). "When

---

[6]

In *Locklear v. Holland*, 194 F.3d 1313, 1999 WL 1000835 (6th Cir. (Ky.)), Locklear's Team recommended that Locklear's custody level be lowered and that he be transferred to a prison camp close to home. Locklear's presentence investigation report ("PSI"), however, contained purportedly inaccurate information alleging that Locklear had been charged with rape. Locklear strongly disputed the PSI, which he claimed caused him to be denied placement in the prison camp, thus violating his due process rights.

The Sixth Circuit rejected Locklear's claim, citing *Moody v. Daggett, supra* at 88, n.9, for the proposition that prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated.

7

monetary damages are sought under section 1983 . . . a showing of some personal responsibility of the defendant is required." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973). A plaintiff must prove that a particular defendant was personally involved in the deprivation of his rights. *Id.*

The instant complaint describes at length general facts without naming the specific defendants involved in each event. It does not mention Terry O'Brien at all. A plaintiff must demonstrate that the defendant proximately caused his alleged injuries. *White v. Gerbitz*, 892 F.2d 457, 463 (6th Cir. 1989). "Congress did not intend §1983 liability to attach where causation is absent." *Deaton v. Montgomery City, OH*, 989 F.2d 885, 889 (6th Cir. 1993). To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Id. See also King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986). For this reason, the claims against Defendant Terry O'Brien are dismissed with prejudice for failure to state a claim upon which relief can be based.

### 3. Claims Stemming From Segregation and/or Solitary Confinement

The plaintiff alleges that his 90-day confinement in segregation and/or solitary confinement in the Safford County Jail and FCI-Phoenix violated both his Fifth and Eighth Amendment rights. The Court must dismiss this claim without prejudice. To the extent that the plaintiff complains about actions which occurred in a county jail in the state of Arizona, venue in this Court would not be proper. Title 28 U.S.C. §1391(b) provides that:

> [a] civil action where jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions

8

giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. {Emphasis Added}. The plaintiff would be required to assert a claim relating to the Safford County Jail in the appropriate federal court in Arizona, under 42 U.S.C. §1983.

It appears from the complaint that the "substantial part of the events" giving rise to the plaintiff's various *Bivens* claims about being in segregation and/or solitary confinement occurred in either the county jail in Safford, Arizona, or in a federal facility in Phoenix, Arizona, not in the Eastern District of Kentucky.[7] The plaintiff does not allege *any* action along this line having occurred since his transfer to FCI-Ashland.

The unconstitutional actions about which the plaintiff complains: (1) the alleged denial of due process; (2) the alleged denial of equal protection of the law based upon Mexican nationality; and (3) the alleged denial of access to courts, occurred at correctional facilities in *other* states, not Kentucky. Consequently, for purposes of 28 U.S.C. §1391(b), the proper venue for that particulars *Bivens* claims is in Arizona, not the Eastern District of Kentucky.

When a civil action is brought in the wrong district, the court may dismiss it or transfer it to the proper district. 28 U.S.C. §1406(a). Additionally, 28 U.S.C. §1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought." (Emphasis added).[8] The

---

[7] To the extent that the plaintiff alleges that the Safford County Jail--not a federal facility--violated his due process rights by placing him in confinement or segregation, his claims against that facility would fall under 42 U.S.C. §1983.

[8] Title 28 U.S.C. §1406(a) provides as follows:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, *or if it be in the interest of justice,* transfer such case to any district or division in which it could have been brought. (Emphasis Added.)

9

decision to dismiss or transfer a case under §1406(a) is "within the district court's sound discretion." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).

Transfer of a proceeding based on improper venue is not mandatory, and is justified only if the district court determines that such transfer is "in the interest of justice." *See Diebold v. FirstCard Financial Services, Inc.*, 104 F.Supp.2d 758, 762-63 (N.D. Ohio 2000) (where district court lacked personal jurisdiction over the defendant, the interests of justice did not warrant transfer; dismissal in lieu of transfer would not prejudice the plaintiff because there was ample time in which to re-file in a proper forum).

The plaintiff's *Bivens* claims alleged to have arisen in Arizona may be subject to possible defenses such as: (1) failure to exhaust and/or (2) dismissal as frivolous under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995).[9] In light of these possible defects, this Court is not inclined to transfer the plaintiff's Fifth and Eighth Amendment *Bivens* claims to the appropriate district court in Arizona.

The Court dismisses without prejudice the following claims which the plaintiff alleges occurred *prior* to his transfer to FCI-Ashland: (1) Fifth Amendment claims relating to alleged denial of equal protection; (2) Fifth and/or Eighth Amendment claims relating to his solitary confinement and/or confinement in segregation while in Arizona; and (3) alleged denial of his First Amendment right of access to the courts. They are dismissed without prejudice to the plaintiff asserting them in the appropriate venue.

---

[9] For a prisoner, a deprivation of a legally cognizable liberty interest occurs only when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     The Clerk of the Court is directed to reclassify this action as one falling under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

(2)     This action is **DISMISSED** *sua sponte*, and judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This 11th day of October, 2005.

                                                      HENRY R. WILHOIT, JR.
                                                      SENIOR U. S. DISTRICT JUDGE